**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4131

BARRY GLEN THOMPSON, a/k/a Berry
G. Thompson,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Charles H. Haden II, Chief District Judge.
(CR-95-115)

Submitted: October 17, 1996

Decided: October 29, 1996

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, George H. Lancaster, Jr.,
Assistant Federal Public Defender, Charleston, West Virginia, for
Appellant. Rebecca A. Betts, United States Attorney, Monica K.
Schwartz, Assistant United States Attorney, Charleston, West Vir-
ginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Barry Glen Thompson appeals the sentence of 144 months imprisonment he received after his guilty plea to an information charging that he distributed marijuana, 21 U.S.C.A. § 841 (West 1981 & Supp. 1996), and to Count Three of a federal indictment charging him with money laundering in violation of 18 U.S.C.A. § 1957(a) (West Supp. 1996). He contends that the district court clearly erred in finding that he was a leader in the drug offense, USSG § 3B1.1(c),* and that he possessed a firearm during the drug offense, USSG§ 2D1.1(b)(1). Finding no error, we affirm.

Between 1988 and 1990, Barry Thompson grew and sold marijuana on a small scale in North Carolina. During this time, he became acquainted with Tommy Spangler and the two worked together to some degree in growing marijuana. Thompson then moved back to West Virginia where he had grown up. Beginning in 1990, Barry and his brother, Larry Thompson, were partners in a marijuana business for several years.

At Barry Thompson's sentencing hearing, John Ellison testified that Barry Thompson sold marijuana to him in 1991 through Elvis McVey, a mutual friend. After several months, Thompson cut out McVey and dealt directly with Ellison. Ellison testified that Tommy and J.D. Spangler (Tommy's brother), assisted the Thompsons the year before in cultivating marijuana plants which they maintained in isolated plots. In return, they received marijuana, some of which Tommy Spangler sold to Ellison.

In early 1993, the Thompsons proposed that they collaborate with

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1995).

2

Ellison in growing a large number of marijuana plants in a work shed on Ellison's property. Barry Thompson told Ellison that he would receive $5000 and a portion of the marijuana harvest if he participated. Ellison agreed and proceeded to insulate the building. Mike Brown, who worked for Ellison as a handyman, helped to finish the work on the building without the Thompsons' knowledge. The Thompsons provided the marijuana plants, dirt and trays to grow the plants in, and a grow light. On the night before Ellison was arrested in May 1993, the Thompsons, assisted by Ellison, Tommy Spangler, and J.D. Spangler (Tommy's brother), removed between 70 and 150 plants from the growing shed to be replanted outdoors at a location unknown to Ellison.

Ellison testified that Barry and Larry usually carried 9 mm pistols in their vehicles and that he saw them wearing holstered handguns while they got ready to go out on "four wheelers" with jugs of water and chemicals; he assumed they were going to cultivate the marijuana plants they had growing in the woods. He said that once, while Barry was present, Larry aimed a pistol with a laser sight at his chest and said jokingly, "See how easy it would be to eliminate a problem." Elvis McVey testified that Barry said he always carried a weapon and that he saw a box of bullets in Barry's car which he believed were for a 9 mm pistol.

On appeal, Larry Thompson also testified and confirmed much of Ellison's testimony. He denied pointing a gun at Ellison.

Barry Thompson first argues that the two-level role adjustment was clearly erroneous because the evidence did not establish that he controlled or directed others, claimed a larger share of the profits, or participated in an unusual degree. The adjustment is warranted if the defendant is a leader, organizer, manager, or supervisor; more than one person may qualify as a leader or organizer. USSG § 3B1.1(c), comment. (n.4). The district court found that both Barry and his brother had a position of leadership over Ellison and the Spanglers in the marijuana conspiracy. We cannot say that this finding is completely erroneous. The Thompsons initiated the large-scale indoor growing scheme with Ellison, decided what return he could expect from his participation, and removed plants at will from Ellison's building to their own secret outdoor plots. The Spanglers' contribu-

3

tions were even more limited. Ellison described Tommy Spangler as a "gopher."

We also have no difficulty in deciding that the district court's decision to enhance Thompson's sentence for possession of a firearm during the offense was amply supported. While Thompson argues that he carried a firearm simply because it was a common practice in the area, the court found that guns are commonly carried for protection of persons and property and that, in this instance, Thompson was protecting his marijuana. We cannot find that it was clearly improbable that the weapon was connected with the offense, as Thompson contends. USSG § 2D1.1, comment. (n.3).

The sentence is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4